UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**BRUCE GRUNWALD,**

    **Plaintiff,**

v().                                             Case No.  2:10-CV-440-FtM-DNF

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

## OPINION AND ORDER[1]

Plaintiff filed a Title II application for a period of Disability and Disability Insurance benefits and a Title XVI application for Supplemental Security Income on June 24, 2004. In both applications Plaintiff alleged disability beginning July 15, 1991, (which was amended at the hearing) to July 21, 1993 (with Plaintiff's date last insured being December 31, 1996). (Tr. 19, 1065, 1109). These claims were denied initially on September 22, 2004, and upon reconsideration on February 4, 2005 (Tr. 70, 76).

On April 27, 2007, a hearing was held and a supplemental hearing was held on January 23, 2008 (Tr. 1061, 1106) before Administrative Law Judge ("ALJ") F. Y. Ayers. Joyce Ryan, M.A., a vocational expert ("VE") appeared and testified at both hearings and Plaintiff was represented by counsel at both hearings.

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated October 19, 2010 (Doc.# 1

At the supplemental hearing on January 23, 2008, the ALJ confirmed that he would grant benefits on the Title XVI (SSI) claim from the date of the filing, and the only issue that remained was the Title II (DIB) claim (Tr. 1109).

On March 18, 2008, ALJ Ayer issued a decision based on Plaintiff's application for a period of disability and disability insurance benefits protectively filed on June 24, 2004, finding Plaintiff not disabled under sections 216(I) and 223(d), of the Social Security Act ("SSA") through December 31, 1996, date last insured ("DLI").

Based on the application for supplemental security income protectively filed on June 24, 2004, the Plaintiff has been disabled under section 1614(a)(3)(A) of the Social Security Act "SSA" beginning June 24, 2004 (Tr. 20). The Appeals Council denied review on May 28, 2010, making the ALJ's decision the final decision of the Commissioner. For the reasons set out herein, the decision is **AFFIRMED**.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

I.  **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION AND STANDARD OF REVIEW.**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On March 18, 2008, the ALJ issued a decision that Plaintiff was disabled within the meaning of the Social Security Act as of June 24, 2004 for Supplemental Security Income (Tr. 20). However, the ALJ determined that Plaintiff was not disabled under Title II for any time through December 31, 1996, Plaintiff's "DLI" (Tr. 20). At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date of July 21, 1993. At Step 2, the ALJ found that since the amended alleged onset date of disability and continuing through the "DLI" of December 31, 1996, Plaintiff had the following severe impairments: right shoulder impingement and degenerative disc disease of the cervical spine. As of June 24, 2004, Plaintiff had the following severe impairments; bilateral shoulder impingement, degenerative disc disease of the cervical spine, and post traumatic stress disorder ("PTSD")[2]. At Step 3, the ALJ found that since the amended alleged onset date of disability, Plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. At Step 4, the ALJ determined that prior to June 24, 2004, Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567.(b) and 416.967(b), with the exception that he was unable to perform tasks

---

[2] Plaintiff started suffering from PTSD at some point following his service in the Vietnam War. The ALJ considered Plaintiff's PTSD only in the part of his opinion where he found that Plaintiff was disabled as of June 24, 2004 (Tr. 27). During the first hearing, the ALJ noted it was unclear when exactly Plaintiff's PTSD became apparent.

requiring that he raise the arms overhead, or perform overhead activity (Tr. 22). At Step 5, the ALJ concluded Plaintiff could perform other work in the national economy prior to his "DLI", noting the job recommendations of the "VE" (Tr. 25-27). Accordingly, the ALJ found the Plaintiff not disabled at step five of the sequential evaluation on the Title II claim. 20 C.F.R. §§404. 1520(g) (Tr. 22).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.  REVIEW OF FACTS

Plaintiff was born on July 21, 1950, and was forty-six years old at the time his insured status expired on December 31, 1996. Plaintiff was considered a "younger person (under age 50)." 20 C.F.R. 404.1563(c). Plaintiff graduated from high school but alleges he only reads at a third-grade level. Plaintiff's past relevant work was as a construction worker, truss assembler, maintenance worker and underground cable installer (Tr. 132-34, 194, 1088).

Between October 1990 and January 1991, Plaintiff was treated by Dale A. Greenburg, M.D., an orthopedic surgeon for a fractured ankle. Plaintiff advised he had injured his ankle while working. (Tr. 435-436). In November of 1992, Plaintiff was treated by Dr. Greenburg for a fifth rib fracture, paraspinal tenderness, and dizziness. Plaintiff advised he had been attacked and beaten. (Tr. 435).

On July 21, 1993, Plaintiff injured his right upper extremity while digging a ditch to install underground cable (Tr. 88-89). As a result of this injury, Plaintiff was again seen by Dr. Greenburg and was treated for bilateral shoulder impingement and mild left knee crepitus. Plaintiff complained of pain in his shoulder, right elbow, left wrist, and left knee. Plaintiff was treated conservatively and in December 1993, Dr. Greenberg concluded Plaintiff was capable of performing light exertion with lifting restricted to 30-40 pounds and to avoid overhead lifting.

In February of 1994, Dr. Greenberg performed right shoulder arthroscopy and released Plaintiff to light work duty in May of 1994. Through 1994 and 1995, Dr. Greenburg's medical records reflect Plaintiff was not capable of returning to his prior

medium and heavy exertional jobs, but was still capable of light duty with no frequent lifting of over 25 pounds or reaching overhead.

In March of 1996, Plaintiff began treating with David Sudderth, a neurologist. Dr. Sudderth observed Plaintiff had mild bilateral carpal tunnel syndrome and noted Plaintiff's complaints of numbness in the right and left hands, "which awaken him at night and cause him to drop objects" (Tr. 279). Dr. Sudderth found mild bilateral ulnar nerve entrapment at the elbow and mild right hand carpal tunnel syndrome (Tr. 300-301).

Also in March of 1996, an MRI of Plaintiff's cervical spine revealed a large herniated disc at levels C4-5, with some evidence of possible cord compromise. On April 11, 1996, Dr. Sudderth, noted Plaintiff had muscle spasms in the cervical spine region with symptoms of radiculopathy to the upper extremities, with no evidence of weakness, atrophy or sensory loss. On May 2, 1996, Dr. Sudderth noted that the EMG nerve conduction studies of the upper extremities were "essentially unremarkable", and provided no evidence of radiculopathy.

In March 1996, Dr. Sudderth observed that Plaintiff was dealing with depression. Dr. Sudderth felt this was affecting Plaintiff's ability to return to work (Tr. 370, 375, 402). Dr. Sudderth believed that Plaintiff's depression was a result of his work related injury to his back and Plaintiff should have a psychological evaluation (Tr. 402). Plaintiff was seen by Robert Mignone, M.D., who diagnosed major depression. Plaintiff was prescribed anti-depressants. Dr. Mignone placed Plaintiff at "maximum medical improvement" on November 18, 1996, with a "0%" impairment rating from a psychiatric point of view.

On October 9, 1996, a letter was written by George W. Sypert, M.D. of Southwest Florida Neurosurgical Associates re: "Work Comp". Dr. Sypert writes that Plaintiff was returning to his office for a check up six weeks after having "anterior microsurgical decompression and arthrodesis for a large herniated disc at Level C4-C5". Dr. Sypert: "His cervical wound has healed well. There is no evidence of infection. His physical exam shows no evidence of motor or sensory deficit". Dr. Sypert found Plaintiff 9% disabled according to Florida Impairment Rating Guide. "He is released to return to full time work without restrictions" (Tr. 100).

Plaintiff continued to complain of pain due to the carpal tunnel "CTS" and on August 7, 1997, and September 15, 1997, respectively; Dr. Greenberg performed carpel tunnel operations on Plaintiff's right and left hand (Tr. 255). The record shows Plaintiff's right hand recovered quickly; however, he had a slow recovery with his left hand and it was recommended he should not work for at least one month (Tr. 424-25). As the medical record documents, Plaintiff's carpal tunnel surgery was performed after his "DLI" and it was specifically noted Plaintiff needed (only) one month to recuperate from the procedure on his left hand. The ALJ also noted that in July 1999, Plaintiff settled his workers' compensation claim for $218,000.00 (Tr. 98).

On January 2, 2008, Plaintiff's treating neurologist, David Sudderth, M.D. completed an assessment in which he concluded that as of December 31, 1996, Plaintiff's spinal disorder met the criteria of listing section 1.04. In his assessment, Dr. Sudderth noted that in December 1996, Plaintiff demonstrated evidence of nerve root compression characterized by limitation of motion of the spine, motor loss, sensory loss, and reflex loss.

Treatment records confirmed the central herniated disc at cervical level C4-5 with some "cord compression but no foraminal encroachment or canal stenosis". On April 11, 1996, Dr. Sudderth noted Plaintiff demonstrated muscle spasm in the cervical spinal region and symptoms of radiculopathy to the upper extremities, but that there was no evidence of "weakness, atrophy or sensory loss". On May 2, 1996, Dr. Sudderth noted that the "EMG" nerve conduction studies of the upper extremities were "essentially unremarkable", providing no objective evidence of radiculopathy, and Plaintiff demonstrated only "mild myelopathy" of the cervical spine and possible right carpal tunnel syndrome.

**III.     SPECIFIC ISSUES AND CONCLUSIONS OF LAW:**

    **A.     THE ALJ FAILED TO DISCUSS IN HIS DECISION PLAINTIFF'S HAND IMPAIRMENTS WHICH EXISTED PRIOR TO THE "DLI"**

Plaintiff argues that since Plaintiff had carpal tunnel syndrome before December 31, 1996, his "DLI", that the ALJ was required to consider the evidence of this impairment and give weight to it in his opinion. 20 C.F.R. 404.1545(a)(2)(e).

In the decision, the ALJ discussed the medical evidence and testimony concerning Plaintiff's upper extremities (Tr. 19-29), including a nerve test (EMG) showing possible right carpal tunnel syndrome "CTS" (Tr. 22) and Dr. Sudderth's diagnosis of right "CTS" (Tr. 24). Thus, Plaintiff's claim that the ALJ failed to consider his "CTS" is without merit.

At the hearing, the ALJ properly analyzed "CTS" and noted the following: (1) during the relevant period, Plaintiff had only mild right "CTS"; (2) the absence of a medical opinion that "CTS" restricted Plaintiff's use of his hands prior to the expiration of his DIB insured

status in December 1996; and (3) Plaintiff did not undergo "CTS" surgeries until late 1997 after his "DLI" (Tr. 1120-21).

Substantial evidence from the relevant time period supports the ALJ's analysis regarding Plaintiff's "CTS": (1) October 1993 - some left wrist swelling, but x-ray was negative (Tr. 206); (2) December 1993 - elbows and wrists responded well to conservative treatment, Plaintiff can return to light-duty work with no lifting more than 30-40 pounds and no overhead lifting (Tr. 433); (3) August 1994 - Plaintiff "doing well," nerve test (EMG) negative, and he can return to light-duty work with no repetitive lifting of more than 50 pounds and no prolonged overhead lifting (Tr. 431); (4) July 1995 - physical capacity evaluation ("PCE") advised Plaintiff was independent in daily living activities, had normal grip strength for his age, and there were no hand or wrist restrictions except no lifting, carrying, or pushing/pulling more than 10 pounds frequently, 25 pounds occasionally (Tr. 241-42, 247); (5) August 1995 - Dale A. Greenberg, M.D., a board-certified orthopedic surgeon, concurred with the restrictions in the July 1995 PCE (Tr. 427); (6) March 1996 - Dr. Sudderth noted a positive Tinel's sign in Plaintiff's right wrist and diagnosed probable "CTS", but did not opine any hand or wrist restrictions (Tr. 369-70); (7) April 1996 - Dr. Sudderth noted that a nerve test showed bilateral ulnar nerve entrapment at the elbow and mild right "CTS", but did not opine any hand or wrist restrictions (Tr. 296); and (8) October 1996 - George W. Sypert, M.D., a board certified neurosurgeon, reported that a physical exam showed no evidence of motor or sensory deficit, opining Plaintiff "is released to return to full time work without any restrictions" (Tr. 100).

The ALJ properlly considered Plaintiff's "CTS" at the hearing and in the decision (Tr. 22, 24) (Tr. 1120-21). Substantial evidence supports the ALJ's analysis that Plaintiff's "CTS" did not result in any hand or wrist restriction during the relevant time period (Tr. 100, 206, 241-42, 247, 296, 369-70, 427, 431, 433). Plaintiff presumes that because he was diagnosed with "CTS" before December 1996, he was restricted to only occasional hand use during the relevant time period. (Pl.'s Br. 17-18). *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). However, showing that Plaintiff's "CTS" <u>may</u> have become disabling after his DIB insured status expired in December 1996 is insufficient to establish eligibility for DIB under the Social Security Act. *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled by carpal tunnel syndrome prior to his "DLI" and that it was properly considered.

### B. THE ALJ'S FAILURE TO CONSIDER IN HIS DECISION PLAINTIFF'S HAND IMPAIRMENTS

Plaintiff claims that, in the hypothetical to the VE, the ALJ should have included a restriction for only occasional hand use. (Pl.'s Br. at 17-18). Plaintiff presumes that he had such a restriction during the relevant time period. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1161 (11th Cir. 2006); *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1270 (11th Cir. 2007). As stated, the ALJ previously determined Plaintiff had no hand impairment that existed prior to his "DLI" and thus, the ALJ presented a proper hypothetical to the "VE".

Substantial evidence supports the ALJ's decision that Plaintiff was not disabled under the "Act" prior to his "DLI" and the "VE" properly determined Plaintiff could perform unskilled, light jobs that exist in significant numbers in the national economy. (Tr. 25-28, Findings No. 10, 14). 20 C.F.R. § 404.1520(g).

### C. THE ALJ FAILED TO CONSIDER PLAINTIFF'S IMPAIRMENTS IN COMBINATION AS REQUIRED BY 20 C.F.R. 404.1523.

Plaintiff argues that the ALJ erred because his decision contains no analysis addressing Plaintiff's impairments in combination (his physical and mental medical problems) nor discuss the effect Plaintiff's multiple impairments could have on his ability to return to the workplace (Tr. 368-370).

In the decision, the ALJ found that Plaintiff did not have "an impairment or combination of impairments" that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22, Finding No. 4). 20 C.F.R. § 404.1523. The ALJ considered "all symptoms" and the extent to which they were reasonably consistent with the objective medical evidence (Tr. 23). Additionally, the ALJ found that Plaintiff's medical impairment[s] could reasonably be expected to cause the alleged symptoms, but his statements regarding their intensity, persistence, and limiting effects were not entirely credible (Tr. 24). Thus, the ALJ properly considered the combined effect of his impairments. 20 C.F.R. § 404.1523; *Hutchinson v. Astrue*, No. 10-12197, 2011 WL 148062, at *2 (11th Cir. Jan. 18, 2011).

Plaintiff also suggests the ALJ erred by not specifically discussing certain parts of Dr. Sudderth's records in the decision (Pl.'s Br. 19-20). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Wilkinson v. Comm'r of Soc. Sec.*, 289 Fed. Appx. 384, 386 (11th Cir. 2008).

Further, Plaintiff's claim that Dr. Sudderth's letter, dated March 7, 1996, and sent to Travelers Insurance Company should be construed as precluding him from performing any

work is without merit (Tr. 368-70). (Pl.'s Br. 19-20). Dr. Sudderth directed this letter to the workers' compensation insurance carrier (Travelers); therefore, the notation regarding "a return to the workplace" should be construed as referring to Plaintiff's job as an underground cable installer, not all jobs in general (Tr. 370).

The record also shows that Dr. Sudderth, did not opine any specific functional restrictions during the relevant period, but in August 1995, Dr. Greenberg opined restrictions consistent with the ALJ's "RFC" determination of light work and no overhead reaching (Tr. 247, 427).

While Plaintiff attempts to undermine Dr. Greenberg's opinion because he is an orthopedic surgeon, not a neurologist, such challenge is unavailing. (Pl.'s Br. 20). Even assuming that a treating orthopedic surgeon is somehow unqualified to opine functional restrictions, in October 1996, Dr. Sypert (a neurosurgeon) opined that an exam showed "no evidence of motor or sensory deficit," and Plaintiff could return to full-time work without any restrictions (Tr. 100).

Plaintiff has failed to prove any restriction during the relevant period in excess of the ALJ's proper "RFC" determination of light work and no overhead reaching, which is supported by substantial evidence. *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).

> D. **THE ALJ REJECTED DR. SUDDERTH'S OPINION THAT PLAINTIFF'S IMPAIRMENTS MET OR EQUALED LISTING 1.04A**

Plaintiff contends that the ALJ erred when he rejected Dr. Sudderth's opinion with respect to the listings because "his opinion was inconsistent with his own treatment records (Tr. 22).

The Listings describe each major body system impairment considered severe enough to preclude a person from any gainful activity regardless of age, education, or past work experience. 20 C.F.R. § 404.1525(a). Some opinions, (such as Plaintiff's RFC or whether his impairments met or equaled a Listing), are not medical opinions, but rather "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(e); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Therefore, contrary to Plaintiff's claim that all opinions from a treating physician are entitled to substantial or considerable weight, Dr. Sudderth's opinion that Plaintiff's impairments met Listing 1.04A is not entitled to any special significance (Tr. 1011). (Pl.'s Br. at 20-21); 20 C.F.R. § 404.1527(e)(3). Moreover, because vocational factors are not considered, Plaintiff must present precise evidence that, during the relevant period, his impairments met all the criteria of Listing 1.04A.12, 20 C.F.R. § 404.1520(d); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)

Dr. Sudderth did not provide any rationale or explanation for his checkmark indication that Plaintiff's impairments met Listing 1.04A (Tr. 1011). 20 C.F.R. § 404.1527 (d)(3) ("[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion"); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (checkmark opinion on standardized form was "not particularly informative"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

As the ALJ noted (Tr. 22), the medical evidence from the relevant period shows that Plaintiff's impairments did not meet all the criteria of Listing 1.04A, (as previously stated)

(1) in April 1996, Dr. Sudderth reported that Plaintiff's physical exam showed "no weakness, atrophy or sensory loss" (Tr. 373); (2) in May 1996, a nerve test (EMG) "was essentially unremarkable" regarding Plaintiff's neck/shoulders (no objective evidence of cervical radiculopathy) and showed right CTS in Plaintiff's wrist, and Dr. Sudderth diagnosed mild myelopathy (Tr. 402); and (3) in June 1996, after re-reviewing Plaintiff's cervical MRI's, Dr. Sudderth reported a herniated disc at C4-5 with cord compression and disc bulges at C3-4/C5-6 with "no clear foraminal encroachment or canal stenosis at these levels" (Tr. 382). Thus, the ALJ determined that Dr. Sudderth's own treatment records from 1996 contradicts his opinion dated January 2, 2008, that Plaintiff's spinal disorder met the criteria of listing section 1.04 as of December 31, 1996. Further, shortly before Plaintiff's DIB insured status expired, Dr. Sypert noted that a physical exam showed no evidence of motor or sensory deficit (Tr. 100).

Therefore, substantial evidence supports the ALJ's finding that during the relevant period, Plaintiff's impairments did not meet *all criteria* of Listing 1.04A. 20 C.F.R. § 404.1525 (c)(3) (an impairment "meets the requirements of a listing when it satisfies all of the criteria of that listing"); *Wilson v Barnhart*, 284 F.3d 1219, 1224 (a claimant "must provide medical reports documenting that the conditions meet the specific criteria of the Listings").

### E. THE ALJ ERRED IN RELY ON THE VOCATIONAL EXPERT'S TESTIMONY

The Plaintiff argues that at the supplemental hearing, the VE testified that Plaintiff could perform jobs that involved grading, sorting and assembling (Tr. 1117). The VE also determined based on the ALJ's hypothetical that Plaintiff could perform as an assembler of

plastic hospital products and/or as an inspector of surgical instruments. Plaintiff also argues that the VE stated incorrectly that there were far more of these jobs available locally and nationwide then are supported by the actual job statistics.

While Plaintiff always bears the burden of proving disability, at step five in the sequential evaluation of his "DIB" claim, the Commissioner must show that, during the relevant period, there were a significant number of jobs in the national economy that Plaintiff could perform consistent with his vocational profile and RFC for light work and no overhead reaching. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

In response to a hypothetical question that described Plaintiff's vocational profile and RFC for the relevant time period, the VE testified that Plaintiff can perform unskilled, light jobs, such as production assembler, hospital products assembler, and surgical instrument inspector (Tr. 1117-18). 20 C.F.R. § 404.1560(c)(1) ("We will look at your ability to adjust to other work by considering your RFC and your vocational factors of age, education, and work experience."); 20 C.F.R. § 404.1566(e) (the Commissioner may use a VE to determine whether a claimant can perform other work that exists in the national economy); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (VE's testimony in response to a valid hypothetical constitutes substantial evidence).

Plaintiff claims that in the hypothetical to the VE, the ALJ should have included a restriction for only occasional hand use. (Pl.'s Br. at 17-18). Plaintiff must be presuming that he had such a restriction during the relevant period. *Crawford*, 363 F.3d at 1161 (ALJ "was not required to include findings in the hypothetical that [he] had properly rejected as unsupported"); *Ingram,* 496 F.3d at 1270 (ALJ properly omitted symptoms and limitations

from the hypothetical that were unsupported by the record or alleviated by medication).

Plaintiff suggests that the VE overstated the number of available identified jobs as 4 million, surmising "[a]t most, there were 746,700 relevant assembly-type and inspecting -type jobs available nationwide." (Pl.'s Br. at 24). Plaintiff, however, disregards the VE's testimony that the identified jobs were "just representative job titles" (Tr. 1118). 20 C.F.R. § 404.1566(b) (a significant number of available jobs in the national economy can encompass one or more occupations). Further, even if there are only a hundred thousand identified jobs available nationally, let alone 746,700 as Plaintiff suggests, the jobs identified by the VE still exist in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (the court held that 174 local, 1,600 state, and 80,000 national jobs was a significant number); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (the court held that 200 state and 10,000 national jobs was a significant number). The VE's testimony more than satisfies the Commissioner's burden to show that the identified jobs exist in significant numbers in the national economy. 20 C.F.R. §404.1566(b); *Jones*, 190 F.3d at 1228; *Allen*, 816 F.2d at 602.

Substantial evidence supports the ALJ's decision that Plaintiff was not disabled under the "Act" prior to the expiration of his DIB insured status on December 31, 1996, because he could perform unskilled, light jobs that exist in significant numbers in the national economy (Tr. 25-28, Findings No. 10, 14). 20 C.F.R. § 404.1520(g) ("If you can make an adjustment to other work, we will find you not disabled."); *Jones*, 190 F.3d at 1228 (a claimant must prove that he or she is unable to perform the jobs listed by the Commissioner).

IV.     CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence and decided by the proper legal standards.

1.      Judgment shall be entered pursuant to sentence four of 42 U.S.C. §405(g) **AFFIRMING** the decision of the Commissioner.

2.      The Office of The Clerk is directed to enter judgment and close this case.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 30th day of September, 2011.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Parties and Counsel of Record